IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JON DAVIS and MARTINA DAVIS, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| ONE STOP FACILITIES MAINTENANCE CORP. and BRETT FINKELSTEIN Defendant. | § § § § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, JON DAVIS ("Plaintiff Mr. Davis") and MARTINA DAVIS ("Plaintiff Mrs. Davis"), (collectively, "Plaintiffs"), complaining of ONE STOP FACILITIES MAINTENANCE CORP. ("Defendant One Stop") and BRETT FINKELSTIEN ("Defendant Finkelstein"), (collectively, "Defendants"), and files this their Original Complaint and for cause of action will respectfully show the Court the following:

### NATURE OF THE LAWSUIT

1.      This lawsuit is brought alleging various causes of action against Defendants for failure to pay their employees.

2.      For over a year, Defendants strung along two executive employees, dangling false promises of compensation, tax compliance, and healthcare coverage. They were paid sporadically, off-the-books, not at all, and eventually terminated under the weight of their employer's and representative's mismanagement. Plaintiffs now seek redress under federal labor laws and

common laws for over $120,000 in unpaid wages, unreimbursed expenses, attorney's fees, and exemplary damages.

## PARTIES

3.  Plaintiff JON DAVIS is an individual and resident of Texas, whose address is in care of The Weisblatt Law Firm, 2312 Katy Fort Bend Road, Katy, Texas 77493.

4.  Plaintiff MARTINA DAVIS is an individual and resident of Texas, whose address is in care of The Weisblatt Law Firm, 2312 Katy Fort Bend Road, Katy, Texas 77493.

5.  Defendant ONE STOP FACILITIES MAINTENANCE CORP. is a Delaware corporation with its principal place of business and headquarters at 9 East 37th Street, 2nd Floor, New York, NY 10016.

6.  Defendant BRETT FINKELSTEIN is an individual and resident of New York, whose address is 400 Chambers Street #26G, New York, NY 10282.

## VENUE

7.  Venue is appropriate pursuant to 28 U.S.C § 1391(b)(2), s a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants employed Plaintiffs in Texas, directed employment decisions affecting Plaintiffs in Texas, and caused injury in Texas.

## JURISDICTION

8.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims under the Fair Labor Standards Act and the Employee Retirement Income Security Act, among other federal statutes. The Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a).

9.  Further, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different

states. Plaintiffs are citizens of the State of Texas. Defendant Finkelstein is a citizen of the State of New York. Defendant One Stop is a corporation organized under the laws of the State of Delaware with its principal place of business in New York.

## CONDITIONS PRECEDENT

10.     All conditions precedent have been performed or have occurred.

## FACTUAL BACKGROUND

11.     The Plaintiffs were employees of Defendant One Stop.

12.     Plaintiff Mr. Davis executed an employment agreement ("Mr. Davis's Agreement") on or about April 5, 2023, which was executed by both Mr. Davis and Defendant Finkelstein, in his capacity as Chief Executive Officer for Defendant One Stop. Mr. Davis's employment as Vice President of Operations began shortly thereafter. The stipulated salary for his position was $160,000.00 annually. A copy of Mr. Davis's Agreement is attached hereto as Exhibit 1 and is incorporated into this Complaint.

13.     Plaintiff Mrs. Davis received an employment agreement ("Mrs. Davis's Agreement") on or about January 8, 2024, which was executed by Mrs. Davis and intended to be executed by Defendant Finkelstein, in his capacity as Chief Executive Officer for Defendant One Stop. Despite this agreement not being executed by Defendant Finkelstein, Defendant One Stop began Mrs. Davis's employment pursuant to its terms, and her employment as Vice President of Sales and Marketing began shortly thereafter. The stipulated salary for her position was $130,000.00 annually. A copy of Mrs. Davis's Agreement is attached hereto as Exhibit 2 and is incorporated into this Complaint.

14.     In addition to their regular salaries, Plaintiffs were afforded and promised benefits pursuant to their employment agreements. These benefits include "but [were not] limited to, health care,

vacation, personal days, reimbursement for business related travel, entertainment, and participation in company's Profit-sharing plan." Further, both agreements included provisions for severance pay as additional benefits of employment.

15. Plaintiffs not only relied on the promise and expectation of the salary stipulated under the terms of their respective agreements, but also the benefits promised as a part of their employment. Plaintiffs would not have accepted and began working for Defendant One Stop without both the promise and reliance on both the salary promised by Defendant One Stop and the benefits.

16. Plaintiffs were effective employees and worked diligently towards and in furtherance of Defendant One Stop's business interests. Plaintiffs were compensated as W-2 employees and collected a salary. Plaintiffs were never hired as, nor intended to be by any party, independent contractors.

17. For a time, Plaintiffs received the salary and benefits as described and agreed upon.

18. In early 2024 Defendant One Stop began to delay and often completely fail to pay the Plaintiffs their wages and their benefits. In addition, Defendant One Stop, at the direction of Defendant Finklestein, failed and refused to pay for the health insurance benefits which had been promised to the Plaintiffs.

19. The Defendants similarly delayed and failed to pay the Plaintiffs reimbursements which were due to them as a result of incurring legitimate business expenses on behalf of Defendant One Stop.

20. The parties discussed these failures often and in numerous instances Defendant One Stop, and its owner and Chief Executive Officer, Defendant Finklestein, assured the Plaintiffs that the delay and the failures were "transitory" in nature and that they would make good on the monies

that were owed. Plaintiffs relied on these representations made by Defendant Finkelstein and continued to work in furtherance of Defendant One Stop's business interests.

21. On information and belief, Defendant Finkelstein knew that Defendant One Stop would not pay the Plaintiffs in the short term whenever these representations were made, yet he made these representations to Plaintiffs with the surreptitious motive of the Plaintiffs continuing to work in furtherance of Defendant One Stop's, and by direct extension – his own, business interests without compensation.

22. As a consequence of these failures and knowing or reckless misrepresentations, the Plaintiffs were without medical insurance and were required to pay their medical bills completely out of pocket. Plaintiffs were forced to ration medical care and take reduced or no treatments and medications for themselves and their children as a result. This pattern continued well into 2025 until March of 2025, when the Plaintiffs were terminated without cause – ostensibly as retaliation for demanding their unpaid wages.

23. Upon termination, due to the failure of the Defendants to pay their wages and their insurance benefits, the Plaintiffs applied for unemployment benefits to which they are entitled, having been constructively terminated by the failure of the Defendants to pay their wages, insurance, and reimbursements.

24. Upon making this application, the Plaintiffs were shocked and dismayed to find that, in addition to failing to pay them, the Defendants had also failed to pay the requisite payroll taxes, thus jeopardizing the ability for the Davises to receive the unemployment benefits to which they are entitled. Not only that, Defendants failed to pay severance to Plaintiffs pursuant to the terms of their agreements.

25. Based on all observations and interactions from Plaintiffs from the outset of their relationship with Defendant One Stop to present, Defendant Finkelstein exercises complete control over Defendant One Stop in all aspects of its operations, payroll, hiring, practices, and policies. On information and belief, Defendant Finkelstein fails to observe the corporate formalities, frequently comingles corporate and personal assets and accounts, and functionally uses and abuses the corporate form of Defendant One Stop to conduct business individually.

26. Plaintiffs allege that Defendant One Stop exists as an alter ego of Defendant Finkelstein. Allowing the corporate form of Defendant One Stop to provide insulation or protection to Defendant Finkelstein, individually, given these facts and circumstances, would promote injustice, fraud, and would be wholly unfair and inequitable to Plaintiffs. This is especially true given Defendant Finkelstein's misrepresentations described above, made intentionally, recklessly, or negligently to induce Plaintiffs into continuing to work towards his own interests without compensation. Therefore, Defendant Finkelstein is liable personally for the acts and omissions of Defendant One Step.

27. Plaintiff Mr. Davis is owed no less than $76,011.49, and Plaintiff Mrs. Davis is owed no less than $63,497.75. These sums are primarily made up of wages owed under their respective agreements, but also include compensation for reimbursable business expenditures, healthcare premiums owed, healthcare expenses incurred as a result of the failure to provide the promised benefits, and severance pay.

28. Plaintiff Mrs. Davis is owed at least:

- $46,153.96  - Gross pay for work performed in 2024;
- $30,769.20  - Gross pay for work performed in 2025;
- $2,605.72  - Unpaid expense reimbursement;

- $6,152.84   -  Severance pay;

- $5,200.00   - Unpaid health insurance bonuses for 2024-2025

29. Plaintiff Mrs. Davis is owed at least:

- $31,346.24  - Gross pay for work performed in 2024;

- $25,000.00  - Gross pay for work performed in 2025;

- $4,176.00   -  Payroll disruption related fees and financial expenses;

- $5,000.00   -  Severance pay;

- $4,651.51   - Unpaid health insurance bonuses for 2024-2025.

30. In addition to these costs, Plaintiffs suffered consequential damages as a result of the Defendants failures to honor their obligations and the misrepresentations made specifically to induce Plaintiffs to continue working without compensation. These damages include opportunity costs related to finding other employment, costs related to the interruption of normal income, costs related to missed payments and credit score damage, overdraft fees, missed mortgage payments and costs associated with them, costs related to inability to file taxes timely, as well as physical distress over the continued disruptions related to the above. While these damages are difficult to quantify, they are significant, and Plaintiffs reserve the right to provide specific valuations and evidence to support these claims as discovery progresses.

31. Plaintiffs retained counsel and demanded payment from Defendants, providing a letter of demand and over thirty days to provide payment on the amounts owed. Defendants refused and continue to refuse fair payment, for which this lawsuit is now required.

## CAUSES OF ACTION

32. Each cause of action below is pleaded in the alternative to or in addition to each other cause of action set forth herein.

33.     Plaintiffs incorporate the factual assertions described above as if stated in each respective count as if stated verbatim.

## COUNT I – FAIR LABOR STANDARDS ACT ("FLSA")

34.     Plaintiffs assert Defendant(s) violated the FLSA.

35.     The FLSA, 29 U.S.C. § 216(b), defines and affords a private right of action for employees against employers who violate the minimum wage and overtime provisions of Section 206 and 207, respectively.

36.     Plaintiffs were employees of Defendant One Step as defined under the FLSA.

37.     Defendant One Step was their employer as defined under the FLSA.

38.     Plaintiffs received less than the minimum wage or no compensation for work performed for Defendant One Step, as detailed above. In addition, Plaintiffs often worked over forty hours a week while receiving no compensation, such that they were not properly paid overtime pursuant to the provisions of the FLSA.

39.     Defendant One Step failed to pay the wages detailed upon demand and pursuant to the respective compensation agreements with Plaintiffs.

40.     Plaintiffs suffered damages as a result of these failures. These damages include lost wages and additional damages as described above.

41.     In addition to these damages, Plaintiffs are entitled to liquidated damages up to the amount of unpaid wages as pleaded.

42.     Plaintiffs will provide an exact accounting of the dates for which Defendants failed to adhere to the standards of the FLSA as discovery progresses.

## COUNT II – BREACH OF CONTRACT

43.     Plaintiffs assert Defendants breached their respective employment agreements.

44. Plaintiffs and Defendants made respective, valid, enforceable contracts for employment. These contracts are valid and enforceable by means of full execution, in the case of Plaintiff Mr. Davis, or by partial execution, performance, reliance, and mutual acceptance, in the case of Plaintiff Mrs. Davis.

45. Plaintiffs performed their duties pursuant to their respective contracts.

46. Defendants failed to pay wages and benefits owed to Plaintiffs for said performance.

47. Defendants failure to provide wages and benefits, as described above, constitutes a material breach of their respective employment agreements with Plaintiffs, causing actual damages as detailed above.

48. Further, as a direct and foreseeable result of Defendants' breach, Plaintiffs suffered consequential damages, including but not limited to: opportunity costs, disruption of household finances and continuity, costs and repercussions related to inability to pay debts, and physical distress caused by these interruptions.

49. The full amount of these damages will be proven at trial. Plaintiffs reserve the right to supplement and amend their damage model as discovery progresses and additional information becomes available.

**COUNT III – EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA")**

50. Plaintiffs assert Defendants violated the Employee Retirement Income Security Act and seek relief pursuant to 29 U.S. C. § 1132.

51. Plaintiffs were beneficiaries of a qualified healthcare plan provided by Defendant One Step.

52. The healthcare benefits were contractual and were based on a defined premium reimbursement monthly, for which Plaintiffs were to, and did, use said defined premium payments

for payments of healthcare premiums through plans purchased independently in the marketplace. Plaintiffs' respective plans did not fall within the safe harbor provisions such that they might be exempt from ERISA coverage. These healthcare plans therefore qualify as those that are governed by ERISA and this statue's protections.

53. Defendants failed to continue paying for the plan agreed and relied upon by Plaintiffs.

54. Plaintiffs suffered damages as a result of Defendants' failures. Plaintiffs incurred significant out of pocket costs for their healthcare and are entitled to reimbursement of those costs and missed contributions. In addition to this, Plaintiffs are entitled to reasonable attorney's fees and costs under this statute for the necessity of bringing suit to enforce payment and reimbursement of their promised benefits.

## COUNT IV – FRAUD

55. Plaintiffs assert Defendant Finkelstein committed fraud.

56. Defendant Finkelstein made false representations of material fact concerning the lack of payment for Plaintiffs' wages and benefits. These misrepresentations include, but are not limited to, statements that the wages would be forthcoming, that the issues with payment were merely transitory, and that payment would be reimbursed for wages and benefits missed.

57. Defendant Finkelstein made these false representations knowing they were false at the time, or - at the very least - with willful and wanton recklessness for their veracity.

58. Defendant Finkelstein made said knowing or reckless misrepresentations with the explicit intent of inducing Plaintiffs to continue work towards his benefit for no or far less payment than was promised.

59. Plaintiffs relied on these misrepresentations to their severe financial detriment, including: actual damages in the form of lost wages, value of benefits, and reimbursement for medical and

business expenditures; consequential damages in the form of opportunity costs, physical distress, and costs related to interruption of regular salaries; and, exemplary damages equal to the greater of two times the amount of economic damages plus an amount of noneconomic damages found by a factfinder, but no greater than $750,000, or $200,000, whichever is greater, as authorized by Tex. Civ. Prac. & Rem. Code § 41.008(b).

60. As described above, Defendant Finkelstein made such representations individually and Defendant One Step merely serves as his own sham alter ego, therefore he is liable personally.

## COUNT VI – UNJUST ENRICHMENT

61. Plaintiffs assert Defendants were unjustly enriched by the uncompensated work performed and alternatively seek relief in equity.

62. Plaintiffs provided valuable labor and services to Defendants.

63. Defendants knowingly accepted and benefited from those services.

64. Under the circumstances, it would be unjust for Defendants to retain the benefits without paying Plaintiffs the reasonable value thereof.

## COUNT VII – NEGLIGENT MISREPRESENTATION

65. Plaintiffs assert Defendant Finkelstein is liable for damages due to his negligent misrepresentations.

66. Defendant Finkelstein made multiple representations to Plaintiffs in the course of his dealing and employment of Plaintiffs, in which he had a pecuniary interest. These representations include, but are not limited to, statements that the wages would be forthcoming, that the issues with payment were merely transitory, and that payment would be reimbursed for wages and benefits missed

67. The representations made were false and were made to guide Plaintiffs in the course of their personal business. Specifically, they were made to keep Plaintiffs in the employment of Defendants and not seek alternate employment.

68. Defendant Finkelstein did not exercise reasonable care or competence in obtaining or communicating the representations to Plaintiffs, as he had no idea whether sufficient funds to pay Plaintiffs would be realized soon or when the funds for their wages would be available and yet made said representations anyway.

69. Plaintiffs relied on these representations to their severe financial detriment, including actual damages in the form of lost wages, value of benefits, and reimbursement for medical and business expenditures and consequential damages in the form of opportunity costs, physical distress, and costs related to interruption of regular salaries.

70. Plaintiffs' reliance on these representations was reasonable and justifiable, as they had been paid regularly and received benefits in the past and Defendant appeared to be running a successful business at the time the statements were made.

## COUNT VIII – DECLARATORY JUDGMENT

71. Plaintiffs plea for declaratory relief pursuant to 28 U.S.C. § 2201.

72. An actual controversy exists between the parties concerning their respective rights, obligations, and duties under their respective employment agreements, which are attached as Exhibits 1 & 2.

73. Plaintiffs seek a declaration regarding the proper interpretation and application of specific terms of the agreements, including but not limited to the remedies for the failures of Defendants to pay wages and benefits, as well as any other provisions which involve seeking relief from this Court.

74.  Declaratory relief will serve a useful purpose in resolving uncertainty and clarifying the parties' legal relations under their respective agreements.

## ATTORNEY'S FEES

75.  Plaintiffs seek recovery of their reasonable and necessary attorney's fees as authorized by law, including but not limited to:

- Tex. Civ. Prac. & Rem. Code § 38.001, for prevailing on Plaintiffs' breach of contract claim against Defendants;
- 28 U.S.C. § 2202, as further relief authorized following a declaratory judgment under 28 U.S.C. § 2201;
- ERISA § 502(g)(1), as relief in addition to recovery of plan benefits.

76.  Plaintiffs request that attorney's fees be awarded through final judgment, as well as for post-judgment and appellate proceedings as appropriate.

## JURY DEMAND

77.  Trial by jury is hereby requested.

## PRAYER

78.  For these reasons, Plaintiffs ask that upon final trial the Court award Plaintiffs a judgment against Defendants for the following:

   a. Actual damages;

   b. Consequential damages;

   c. Exemplary damages up to $750,000;

   d. A declaratory judgment under 28 U.S.C. § 2201 establishing the parties' respective rights and obligations under their agreements, as requested above;

   e. Pre and Post-judgment interest;

    f.       Court costs;

    g.       Reasonable and necessary attorney's fees; and

    h.       All other relief to which Plaintiffs are justly entitled, at law or in equity.

                Respectfully submitted,

                THE WEISBLATT LAW FIRM, PLLC

                By: */s/Andrew D. Weisblatt*
                    Andrew D. Weisblatt
                    State Bar No. 00785206
                    Email: adw@weisblattlaw.com
                    Dylan J. Clewis
                    State Bar No. 24107584
                    Email: djc@weisblattlaw.com
                    2312 Katy Fort Bend Road
                    Katy, Texas 77493
                    Tel: 713.666.1981
                    Fax: 832.415.0215

                ATTORNEYS FOR PLAINTIFFS

Plaintiffs' Original Complaint
*Jon and Martina Davis v. One Stop Facilities Corp. and Brett Finkelstein*